UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JEREMY JEPSON, on behalf of himself and a Class of all others similarly situated,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>TICOR TITLE INSURANCE COMPANY, a foreign corporation<br>　　　　　　Defendant. | No. C06-1723<br><br>ORDER DISMISSING PUTATIVE CLASS ACTION |

Having reviewed all pleadings and documents submitted by the parties in the matter of Plaintiff Jeremy Jepson's putative class action complaint against Defendant Ticor Title Insurance Company ("TTIC"), the Court DISMISSES the case without prejudice for lack of subject matter jurisdiction. Because the Court reaches the issue of subject matter jurisdiction before considering the merits of the motions currently pending, these motions are hereby terminated: Defendant's "Motion for Summary Judgment" (Dkt. No. 22); Defendant's "Motion for Order Permitting Defendant to Communicate with Some of the Putative Class Members Re: a Remittance and Make Said Remittance to Them" (Dkt. No. 27); Defendant's "Motion to Strike" contained in its Summary Judgment reply brief (Dkt. No. 37); Plaintiff's "Motion to Amend His Class Action Complaint" (Dkt. No. 42); Defendant's "Motion to Strike" contained in its Second Response to the Court's Order to Show Cause (Dkt. No. 55);

ORDER - 1

Plaintiff's "Motion to Withdraw Document" (Dkt. No. 56); Plaintiff's "Motion for Class Certification" (Dkt. No. 38).

### Background

In the course of refinancing his Seattle home in 2005, Plaintiff Jeremy Jepson purchased title insurance from TTIC. Title insurance companies are required by law to file a schedule of their premium rates with the Washington Commissioner of Insurance. RCW § 48.29.140.[1] Once approved by the Insurance Commissioner, the filed premium rates represent the maximum amount that can be charged to consumers for corresponding title insurance coverage.

In violation of RCW § 48.29, TTIC charged Mr. Jepson a premium that was $9.00 higher than the allowable rate filed in its schedule. (Mot. for Summ. J. at 2; Opp'n to Mot. for Summ. J. at 2.) Plaintiff brought the current putative class action on behalf of himself and others who have been similarly overcharged and seeks monetary, declaratory and injunctive relief for: breach of contract; violations of Washington's, Oregon's, New Mexico's, and Arizona's Consumer Protection Statutes; conversion; unjust enrichment; and breach of duty and good faith and fair dealing.[2] The complaint does not include a claim arising under federal law.

### Analysis

Because Plaintiff's claims do not involve a federal question, this Court only has subject matter jurisdiction if there is diversity jurisdiction. A class action can satisfy the requirements for diversity jurisdiction in two ways. First, the class action can be properly heard in federal court if at least one named plaintiff's injury satisfies the jurisdictional minimum amount in controversy ($75,000) and

---

[1] Arizona, New Mexico and Oregon have identical requirements.

[2] Judge Coughenour dismissed Plaintiff's claim for violation of Title 48 of the RCW because there is no private right of action under § 48.29.140. (Dkt. No. 12.)

ORDER - 2

where complete diversity exists among all plaintiffs and defendants. See Exxon Mobil Corp. v. Allapattah Servs., 545 U.S. 546 (U.S. 2005). These requirements are not met in Jepson as the named plaintiff's injury is well below $75,000.

Alternatively, the Class Action Fairness Act of 2005 (CAFA) grants a federal court subject matter jurisdiction in a class action lawsuit when the class comprises more than 100 members, where minimal diversity of citizenship is present, and where the aggregate amount of all class members' claims exceeds $5 million (exclusive of costs or attorneys' fees). 28 U.S.C. § 1332(d). Because the Jepson suit does not satisfy the minimum amount in controversy requirement, diversity jurisdiction is not proper and this Court does not have subject matter jurisdiction over the case.

The Amount in Controversy Was Not Pled in Good Faith

Mr. Jepson's putative class action can invoke diversity jurisdiction only if the aggregate amount in controversy exceeds $5 million. When a plaintiff declares a dollar amount of expected recovery in his complaint, that amount will control for purposes of meeting the minimum amount in controversy requirement only if it is pled in good faith. St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 287 (1938). A plaintiff's "good faith in choosing the federal forum is open to challenge." Id. at 290.

In his original complaint, Mr. Jepson failed to plead any amount in controversy. Mr. Jepson has filed a "Motion to Amend Complaint" which asserts that the "matter in controversy exceeds, exclusive of interest and costs, the sum or value of $5 million." (Dkt. No. 42; Proposed Am. Class Action Cmpl. at ¶13.) The Court finds that the expected recovery in Mr. Jepson's Proposed Amended Complaint was not pled in good faith.

The record suggests that Mr. Jepson failed to conduct an investigation into the number of potential class members or the scope of the class members' potential recovery before filing this

ORDER - 3

lawsuit. Without an informed notion of actual harm, Mr. Jepson fails to define the harm done by this Defendant to this class of plaintiffs. Instead, Mr. Jepson' pleadings are evasive and rely on vague generalizations[3], claiming that "[s]ince at least the mid-1990s, the title insurance industry, including defendants [sic], has ignored the explicitly legal limitations on their premium fees, and has knowingly overcharged untold individual homeowners by hundreds of dollars for policies." (Cmplt. ¶ 7.) Mr. Jepson offers no evidence supporting the breadth of his expected recovery despite his assertion that the "damages can be precisely calculated based on objective data." (Cmplt. ¶ 26.)

To bolster his allegations against TTIC, Plaintiff cites an October 2006 report by the Washington State Office of the Insurance Commissioner entitled "An Investigation Into the Use of Incentives and Inducements by Title Insurance Companies." (Decl. Of Benjamin Schwartzman in Supp. of Pl.'s Opp'n to Mot. for Summ. J., Ex. A.)[4] Mr. Jepson cites to this report as proof that TTIC is "one of the major offenders" among insurers who demonstrate a "common disregard for the laws" and "view the law as little more than a nuisance." (Pl.'s Opp'n to Mot. for Summ. J. at 4.) However, the report makes no mention of TTIC or any other title insurance company over-charging

---

[3]Mr. Jepson's pleadings are rife with expansive generalizations, alleging that "[f]or years, defendant...[has] illicitly reaped enormous financial windfalls at the expense of consumers" (Proposed Amended Cmplt. at 1) through illegal "overcharges from countless ... mistakes and misdeeds" (Pl.'s Resp. to Order to Show Cause at 6) and claims these actions have injured "many thousands of homeowners" (Pl.'s Opp'n to Mot. for Summ. J. at 5) or "thousands, if not hundreds of thousands of similarly situated persons" (Pl.'s Resp. to Order to Show Cause at 2). Indeed, Plaintiff initially withheld from the Court the exact amount of Mr. Jepson's overcharge, choosing instead to characterize the premium fee paid by Mr. Jepson as "significantly higher" than the corresponding fee in TTIC's official rate list. (Cmplt. ¶ 29.) Both parties now acknowledge that Mr. Jepson was overcharged $9.00. (Mot. for Summ. J. at 2; Opp'n to Mot. for Summ. J. at 2.)

[4]Defendant has moved to strike the Commissioner's Report as inadmissible. (Def.'s Reply in Support of TTIC's Mot. for Summ. J. at 9.)

ORDER - 4

for premiums. See Ex. A at 11. Instead, the report condemns the title insurance industry's practice of illegally soliciting business by offering incentives to middle-men.

Mr. Jepson's reliance on this report as substantiation for his current claims suggests that his allegations are based on the following assumption: because title insurers have been known to illegally profit at the expense of consumers, this title insurer likely has profited illegally at the expense of consumers. Such speculation led Mr. Jepson to define his plaintiff class "by positing the various then-known manners in which title insurers had been seen to illegally profit at the expense of customers." (Pl.'s Opp'n to Mot. for Summ. J. at 2) (emphasis supplied). Mr. Jepson does not offer the Court any indication that he has conducted an investigation into the scope of the plaintiff class or the actual harm done. The only specific injury presented by the Plaintiff is the $9.00 overcharge to Mr. Jepson. Based on the speculative nature of his claim and his failure to adequately investigate the harm caused by the Defendant, the Court concludes that the claimed amount in controversy was not pled in good faith.

The Evidence Before the Court Does Not Support Mr. Jepson's Claim that the Amount in Controversy Exceeds $5 Million

On September 25, 2007, the Court issued an Order to Show Cause ordering Plaintiff to provide "support and evidence for the assertion that the amount in controversy, excluding costs and attorneys' fees, exceeds $5 million." (Dkt. No. 47.) In response, Mr. Jepson failed to offer any substantiation but instead maintained that, because he "overtly alleged" damages in excess of $5 million, jurisdiction is proper unless the Court finds to a "legal certainty" that such damages are impossible. Pl.'s Resp. to Order to Show Cause at 7, citing Abrego Abrego v. The Dow Chemical

ORDER - 5

Co., 443 F.3d 676, 683 (9th Cir. 2006).[5]  Because the Court finds that the alleged amount in controversy was not pled in good faith, it need not apply the "legal certainty" test.  Indeed, the evidence on record further supports the Court's conclusion that Plaintiff did not plead the amount in controversy in good faith.

TTIC attributes Mr. Jepson's $9.00 overcharge to a computer program error and contends that the error affected all refinance premiums in King County and Snohomish County for coverage above $260,001 and below $510,001 from the period between July 19, 2004 and June 17, 2006.  (Mot. for Summ. J. at 7.)  TTIC estimates that the overcharges during that period total about $25,000 excluding tax and interest.  (Mot. for Summ. J. at 2; Brennan Decl. at ¶19.)  Mr. Jepson has failed to present any substantiated evidence of overcharges outside that 23-month period and has not offered any facts disputing TTIC's contention that those damages total around $25,000 exclusive of tax and interest.  The Court acknowledges that the plaintiff class may be entitled to treble damages for any claims under the Consumer Protection statutes.  Even with a potential tripling of damages, the evidence on the record does not suggest that the amount in controversy would exceed $5 million.

---

[5]Mr. Jepson later filed a supplemental response to the Court's Order to Show Cause which claimed to offer 'evidence' that TTIC had over-charged for premiums other than those in King and Snohomish Counties between July 19, 2004 and June 17, 2006. (Dkt. No. 53.) This pleading was untimely filed and improperly substantiated. Mr. Jepson relied on a spreadsheet summarizing information given to him by another attorney instead of offering the Court documentation authenticating his allegations. Mr. Jepson later filed a Motion to Withdraw Document No. 53 admitting that the overcharges alleged in that pleading did not fall within Mr. Jepson's claims against TTIC. (Pl.'s Motion to Withdraw at 2.)

ORDER - 6

Conclusion

The Court finds that Mr. Jepson's putative class action does not meet the minimum amount in controversy required for diversity jurisdiction because the amount declared in the Proposed Amended Complaint was not pled in good faith and the evidence before the Court suggests that the amount in controversy is far less than $5 million. Mr. Jepson's action is DISMISSED without prejudice for lack of federal jurisdiction.

The Clerk is directed to send copies of this order to counsel.

Dated: October 26, 2007.

/s/ Marsha J. Pechman

Marsha J. Pechman
U.S. District Judge

ORDER - 7